**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **BRENDA K. LEDERMAN,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:10-CV-1987-M-BK** |
| | § | |
| **MICHAEL J. ASTRUE,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

This case has been referred by the District Judge to the undersigned for Findings,

Conclusions, and Recommendation.  The cause is now before the Court on Plaintiff's *Motion for*

*Summary Judgment* (Doc. 26) and Defendant's *Motion for Summary Judgment* (Doc. 27).  For

the reasons set forth herein, it is recommended that Plaintiff's *Motion for Summary Judgment* be

**GRANTED**, Defendant's *Motion for Summary Judgment* be **DENIED**, and the Commissioner's

decision be **AFFIRMED**.

## I.  BACKGROUND[1]

### A.  Procedural History

Brenda Lederman (Plaintiff) seeks judicial review of a final decision by the

Commissioner of Social Security (Commissioner) denying her claim for Disability Insurance

Benefits (DIB) under the Social Security Act.  In March 2008, Plaintiff filed for DIB, claiming

that she had been disabled since June 2000.  (Tr. at 106).  Her application was denied initially

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

and on reconsideration, and Plaintiff timely requested a hearing before an Administrative Law

Judge (ALJ).  (Tr. at 51, 56, 58, 65).  She personally appeared and testified at a hearing held in

July 2009.  (Tr. at 18).  In September 2009, the ALJ issued his decision finding Plaintiff not

disabled.  (Tr. at 17).  In July 2010, the Appeals Council denied Plaintiff's request for review,

and the ALJ's decision became the final decision of the Commissioner.  (Tr. at 2).  Plaintiff

timely appealed the Commissioner's decision to the United States District Court pursuant to 42

U.S.C. § 405(g).

**B.**      **Factual History**

       **1.**       **Age, Education, and Work Experience**

Plaintiff was 38 years old at the onset of her disability and had a tenth grade education.

(Tr. at 106, 351).  She had past relevant work history as a bookkeeper and grocery store inventory

clerk.  (Tr. at 169-86).

       **2.**       **Medical Evidence**

In May 2005, Plaintiff was noted to have chronic hepatitis C, for which she declined

treatment.  (Tr. at 217).  She reported that she had been diagnosed in 2000.  (Tr. at 341).  Plaintiff

had a history of missing some of her hepatitis treatments and not taking her medications for long

periods of time.  (Tr. at 212, 247, 270).  In 2003, 2004, and 2005, Plaintiff sought hospital

treatment following pain associated with gastroesophogeal reflux disease (GERD), but she did

not always take her prescribed medicine, even though she had done well on it in the past.  (Tr. at

216, 225-226, 247).  She also was diagnosed with gastritis during this time and with

gastroenteritis in 2008.  (Tr. at 268, 358).

Additionally, Plaintiff has a long history of migraine headaches for which she took

2

prescription medication.  (Tr. at 218, 223, 231).  During the relevant timeframe, she also

complained intermittently about back pain and muscle spasms, for which she took pain

medication and muscle relaxers, although her back problems seemed to increase in 2008.  (Tr. at

225, 232, 240, 237, 242, 244, 329-31, 383, 393).  A lumbar spine MRI conducted in July 2008

revealed that Plaintiff had multilevel degenerative changes, disc protrusion, and borderline

central canal stenosis.  (Tr. at 381, 384).  Nevertheless, in August 2008, Plaintiff reported that

she was only taking her back pain medication once in a while.  (Tr. at 431).  In March 2009, she

had an epidural steroid injection in her lumbar spine, but continued to have pain, particularly

with bending, stooping, or sitting for long periods.  (Tr. at 445, 459).

 Plaintiff also was diagnosed with cirrhosis, for which she sought treatment numerous

times from 2007 through 2009.  (Tr. at 200-01, 338-39, 360, 364, 366, 440, 513).  Her treating

physician opined that her cirrhosis caused fatigue, weakness, spider angiomas, and belly pain and

discomfort, and Plaintiff was likely to be absent from work twice a month due to her condition,

although it was unclear whether the cirrhosis was causing her pain.  (Tr. at 514, 516).  Her

hypertension, which she had since 1992, was consistently stable.  (Tr. at 209, 213, 215, 217, 222,

228, 343).  An August 2008 endoscopy revealed three small ulcers on her prepyloric antrum.

(Tr. at 367-68).  However, in October 2008, Plaintiff stated that she was feeling the best she had

in a long time, and her stomach pains had resolved.  (Tr. at 428).

 Plaintiff also was treated for bipolar disorder from 2003 through 2008, and took

psychiatric medications which kept her stable.  (Tr. at 274-75, 280, 282, 288).  She stated in 2006

that she had been on medication for her bipolar disorder for 14 years.  (Tr. at 281).  While she

exhibited more emotional difficulty in 2003 and 2004, during the course of her treatment,

Plaintiff improved and generally stated that she was doing well; in January 2007, she reported

that she was the healthiest she had been in a long time, was sleeping well, and was able to focus.

(Tr. at 279, 281, 283, 287, 289, 294, 297, 299-304).   In February 2008, Plaintiff said that she

believed she had been misdiagnosed as bipolar, and she reported that she was feeling good and

sleeping and eating well.   (Tr. at 270).   She was diagnosed as depressed at that time, but just a

month earlier reported that her emotional health was much more stable than it had been six years

before.   (Tr. at 271, 344).   Nevertheless, in September 2008, she presented for a disability

evaluation, stating that she was disabled due to her bipolar disorder and was going to be put on a

liver transplant list.   (Tr. at 349).   Plaintiff complained of chronic abdominal pain and depression

and reported that she was sometimes able to cook, clean, and take care of her daily living

activities, but not when she was feeling sick.   (Tr. at 350).

     A Residual Functional Capacity (RFC) assessment indicated that Plaintiff's primary

diagnosis was cirrhosis, and her other impairments included hepatitis C and high blood pressure.

(Tr. at 320).   A medical consultant determined that Plaintiff could occasionally lift 50 pounds,

frequently lift 25 pounds, and stand/sit/walk six hours in a workday.   (Tr. at 321).

     **3.**     **Hearing Testimony**

     At the administrative hearing, a medical expert testified that Plaintiff's last blood tests

were mildly abnormal in terms of her cirrhosis, and she had chronic back pain, but she had no

significant nerve root impingement, a normal gait, and full range of motion in her lumbar back.

(Tr. at 21-22).   Further, her hypertension was well-controlled.   (Tr. at 21).

     Plaintiff testified that she quit working due to her back pain, migraine headaches, and

bipolar disorder, which had improved since she stopped working.   (Tr. at 26-27).   She stated that

she could not do a job that involved sitting all day because it hurt her back and legs, and her liver

disease also prevented her from working because she suffered from gastric distress and a

suppressed immune system.  (Tr. at 27-29).  Plaintiff testified that she was able to drive, do some

cooking, paint pictures, and go to church.  (Tr. at 32-33).  A vocational expert testified that a

hypothetical person could work as a bookkeeper if she could lift 20 pounds occasionally, ten

pounds frequently, six/stand/walk six hours in a workday, and occasionally stoop, kneel, crouch,

and crawl.  (Tr. at 36).

C.    <u>ALJ's Findings</u>

As an initial matter, the ALJ found that Plaintiff had performed substantial gainful

activity in 2004 and 2005.  (Tr. at 14).  Next, the ALJ found that Plaintiff had the severe

impairments of lumbar spondylosis, hepatitis C, hypertension, and an ulcer.  (Tr. at 15).  The ALJ

noted that Plaintiff had been diagnosed with bipolar disorder, cirrhosis, and GERD, but did not

make any explicit findings as to the severity of those impairments.  (Tr. at 15-16).  Further, the

ALJ specifically found that Plaintiff's depression was not severe.  (Tr. at 15).  The ALJ

concluded that Plaintiff had the RFC to perform light work, except that she could never climb

and could only occasionally stoop, kneel, crouch and crawl.  (Tr. at 15).  At step four of the

analysis, the ALJ discussed Plaintiff's cirrhosis and bipolar diagnoses, but concluded that she

nevertheless could perform her past relevant work as a bookkeeper.  (Tr. at 16-17).

## II.  ANALYSIS

A.    <u>Legal Standards</u>

1.    **Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to whether the

Commissioner's position is supported by substantial evidence and whether the Commissioner

applied proper legal standards in evaluating the evidence.  *Greenspan v. Shalala*, 38 F.3d 232,

236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3).  Substantial evidence is defined as more

than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a

reasonable mind might accept as adequate to support a conclusion.  *Leggett v. Chater*, 67 F.3d

558, 564 (5th Cir. 1995).  In applying the substantial evidence standard, the reviewing court does

not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes

the record to determine whether substantial evidence is present.  *Greenspan*, 38 F.3d at 236.  A

finding of no substantial evidence is appropriate only if there is a conspicuous absence of

credible evidentiary choices or no contrary medical findings.  *Johnson v. Bowen*, 864 F.2d 340,

343-44 (5th Cir. 1988).

## 2. Disability Determination

The definition of disability under the Social Security Act is the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Pursuant to

20 C.F.R. § 404.1520(d), if a claimant has an impairment which meets the duration requirement

and is listed in Appendix 1 or is equal to a listed impairment, the claimant is deemed disabled

without consideration of age, education, and work experience.

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant

is disabled:

1.      An individual who is working and engaging in substantial gainful activity

6

will not be found disabled regardless of medical findings.

2.        An individual who does not have a "severe impairment" will not be found to be disabled.

3.        An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4.        If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5.        If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).  Under the first four steps of the analysis, the burden of proof lies with the claimant to prove disability.  *Leggett*, 67 F.3d at 564.  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id.*  Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing.  *Greenspan*, 38 F.3d at 236.  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

**B.**   **Issues for Review**

Plaintiff raises seven issues for review, not all of which need to be addressed for the reasons discussed below.  The issues presented, as reworded and reorganized by the Court, are as

follows:

    1.  Whether the ALJ Erred in Finding Plaintiff's Mental Impairment Not Severe

    2.  Whether the ALJ Erred in Failing to Assess the Severity of Plaintiff's Cirrhosis

    3.  Whether Substantial Evidence Supports the finding that Plaintiff's Mental Impairments are not Severe

    4.  Whether the ALJ Erred in Failing to Consider Plaintiff's Mental Impairments in Determining her RFC

    5.  Whether the ALJ Erred in Failing to Give Proper Weight to Plaintiff's Treating Physician Opinion

    6.  Whether the ALJ Erred in Determining Plaintiff's RFC

    7.  Whether the ALJ Erred in Failing to Make Findings on the Functional Demands of Plaintiff's Past Relevant Work

The Court will first address issues 1 and 2 because these arguments relate to an allegation of error at an early stage of the sequential evaluation process.  In this regard, Plaintiff argues that the ALJ applied the incorrect legal standard in assessing the severity of her mental impairments, in violation of *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985).  (Doc. 26 at 7).  Plaintiff suggests that the ALJ should have found her depression and bipolar disorder severe.  (*Id.* at 7).  Relatedly, she argues that the ALJ completely failed to address the severity of her cirrhosis.  (*Id.* at 8).

The government responds that the ALJ properly applied the *Stone* severity standard and correctly determined that Plaintiff's bipolar disorder was not severe.  (Doc. 28 at 8-13). Moreover, the government contends that the ALJ's failure to find Plaintiff's cirrhosis to be severe was harmless.  (*Id.* at 13-14).

Pursuant to the Commissioner's regulations, a severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability

to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).  A literal application of these regulations is inconsistent with the Act, however, because the definition includes fewer conditions than indicated by statute.  *See Stone*, 752 F.2d at 1104-05.  Therefore, the Court of Appeals for the Fifth Circuit has held that an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  *Id.* at 1101, 1104-05.  In other words, the *Stone* standard does not allow for <u>any</u> interference with the claimant's ability to work.  *Sweeney v. Astrue*, 2010 WL 6792819 at *5 (N.D. Tex. 2010).  The *Stone* court also held that it would assume that the ALJ applied the incorrect legal standard to the severity requirement unless the correct standard was set forth by reference to the *Stone* opinion or another of the same effect, or by an express statement that the Court's construction of section 404.1520(c) was used.  *Stone*, 752 F.2d at 1106.  If the ALJ applies the incorrect legal standard, the Court held that reversal is mandatory.  *Id.*

Accordingly, the undersigned previously has reversed and remanded on *Stone* grounds where the ALJ used the incorrect severity standard.  *See e.g.*, *Bradford v. Astrue*, 2011 WL 1297528 (N.D. Tex. 2011); *see also Luna v. Astrue*, 2010 WL 582151, *7 (N.D. Tex. 2010) (Ramirez, M.J.; Lynn, J.); *Grant v. Astrue*, 2010 WL 26478, *7 (N.D. Tex. 2010) (Bleil, M.J.; Means, J.); *Neal v. Comm'r of Social Sec. Admin.*, 2009 WL 3856662 *1 (N.D. Tex. 2009) (Godbey, J.); *Key v. Astrue*, 2007 WL 2781930, *4 (N.D. Tex. 2007) (Kaplan, M.J.; Godbey, J.). Nevertheless, the government suggests that any *Stone* error is harmless here because substantial

evidence supports the ALJ's decision that Plaintiff is not disabled.[2]

In fact, *Stone* provides that "[i]n view of both the Secretary's position in this case and our recent experience with cases where the *disposition has been on the basis of nonseverity*, we will in the future assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement," thereby mandating reversal. *Stone*, 752 F.2d at 1106 (emphasis added). Indeed, numerous Fifth Circuit authorities state that reversal based on a *Stone* error is not required if the ALJ does not terminate the case at step two of the sequential analysis. *See Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987) (finding that appellant's argument that the ALJ erred in failing to find her back problems severe was not grounds for a remand because the case did not implicate the "non-severity" of plaintiff's condition since the ALJ continued through step four of the sequential analysis); *Jones v. Bowen*, 829 F.2d 524, 527 n.1 (no *Stone* error where ALJ properly found that the claimant's hypertension was "mild," but proceeded through step five, rather than denying benefits "prematurely . . . based on an improper determination of 'non-severity'"); *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987) (dicta stating that even though the ALJ failed to cite to *Stone*, the claimant's *Stone* argument was "irrelevant to the

---

[2] On this date, the undersigned has entered a *Memorandum Opinion* denying summary judgment to a different claimant on this same ground. In that case, the government squarely presented and fully briefed for this Court for the first time, the argument that *Stone* error is harmless where the ALJ proceeds beyond step two of the sequential analysis. *See Jones v. Astrue*, No. 3:11-CV-107-BK. The undersigned found in that case that, although the ALJ did not explicitly find the claimant's depression and cervical radiculopathy to be severe, the ALJ did assess the effect of those impairments in formulating the claimant's RFC, and thus the *Stone* error was harmless. (*Id.*, Doc. 30 at 12). Although the government in this case did not urge the harmless error argument as clearly as it did in the *Jones* case, the undersigned believes that the harmless error argument has been adequately raised here and, thus, it will be considered on the merits in the interest of judicial economy. It would serve no purpose to reverse and remand based on a "technical" *Stone* error if such is not necessary.

disposition of the case" because the case was not decided at step two; specifically, the ALJ found that the claimant could return to his past relevant work, "an inquiry unaffected by the test set forth in *Stone*); *Lopez v. Bowen*, 806 F.2d 632, 634 n.1 (5th Cir. 1986) (no *Stone* error occurred where the ALJ found that the claimant did suffer from "severe" impairments, but proceeded to find that the impairments did not prevent him from doing his past relevant work); *see also Anthony v. Sullivan*, 954 F.2d 289, 294 (5th Cir. 1992) (stating that "*Stone* merely reasons that the [severity] regulation cannot be applied to summarily dismiss, *without consideration of the remaining steps in the sequential analysis*, claims of those whose impairment is more than a slight abnormality" and noting that if the claimant does not have a "severe" impairment, the ALJ typically will deny the claim without consideration of the remaining steps in the sequential analysis) (emphasis added).

Further, if the ALJ proceeds past step two of the sequential evaluation process, it is *presumed* that the ALJ found that a severe impairment existed unless the ALJ states otherwise. *Reyes v. Sullivan*, 915 F.2d 151, 154 & n.1 (court could infer that the ALJ found that the claimant's hypertension was a severe impairment because the ALJ found that the hypertension did not prevent the claimant from performing his past relevant work); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (holding that ALJ did not err in not explicitly finding an impairment severe where the ALJ reached the fifth step of the sequential analysis in evaluating the claim and, as a result, implicitly found a severe impairment to exist); *Shipley v. Bowen*, 812 F.2d 934, 935 (5th Cir. 1988) (court could infer that the ALJ found that the claimant's back injury was a severe impairment because the ALJ found that the injury did not meet or equal a listed impairment and did not prevent the claimant from working as a security guard); *Moon v. Bowen*, 810 F.2d 472,

473 (5th Cir. 1987) (noting that the ALJ implicitly found that a severe impairment existed because he proceeded to step five).

Thus, even in those cases where the ALJ does not explicitly find an impairment to be severe, a *Stone* error is not reversible if the ALJ proceeded beyond the second step of the five-step analysis in analyzing the claimant's impairments, thereby allowing the district court to infer that the ALJ found the impairment severe.  In other words, the district court properly can draw this inference where the ALJ considers the impairments in question at later stages of the five-step sequential analysis, which stages are premised on a finding at the second step of the analysis that the impairments were severe.  *See Reyes*, 915 F.2d at 154 & n.1.  This is to be distinguished from the situation wherein the ALJ commits a *Stone* error by applying an incorrect severity standard, explicitly rejects one or more of the claimant's impairments as non-severe based on that error, and proceeds to the later steps of the sequential analysis only with respect to other claimed impairments.  *See Loza v. Apfel*, 219 F.3d 378, 393, 399 (5th Cir. 2000).

In the case at bar, the ALJ clearly committed a *Stone* error because he did not expressly cite *Stone*, nor did he refer to another opinion of the same effect.  Instead, the ALJ stated that an impairment or combination of impairments is severe if it "significantly limits an individual's ability to perform basic work activities."  (Tr. at 13).  Further, he said that an impairment or combination of impairments is not severe when "medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work."  (Tr. at 16).  Although the ALJ did refer to 20 C.F.R. §§ 404.1521 and 416.921, and SSRs 85-28, 96-3p, and 96-4p, none of these sources substitute as a proper construction of the standard.

The ALJ thus applied the incorrect severity standard, yet he accepted Plaintiff's lumbar spondylosis, hepatitis C, hypertension, and ulcer as severe and proceeded to analyze those impairments at step four of the sequential analysis.  (Tr. at 15); *Adams*, 833 F.2d at 512. Moreover, while the ALJ did not explicitly find Plaintiff's bipolar disorder and cirrhosis to be "severe," he did address those impairments at step four.  Accordingly, this Court must presume that the ALJ found Plaintiff's bipolar disorder and cirrhosis to be severe impairments.  *Reyes*, 915 F.2d at 154 & n.1.  Thus, there is no ground for reversal on these bases because the ALJ proceeded beyond step two in the sequential analysis in discussing each of these impairments. *See* SSR 96-8p, 20 C.F.R. § 404.1523 (in assessing RFC, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe).

However, the ALJ applied an erroneous severity standard in explicitly finding that Plaintiff's depression was not a severe impairment <u>and</u> not addressing it later on in the sequential analysis.  (Tr. at 15).  Thus, unlike Plaintiff's bipolar disorder and cirrhosis, the Court cannot presume that the ALJ found Plaintiff's depression severe even though he did not explicitly state so.  Accordingly, pursuant to *Loza*, 219 F.3d at 393, 399, reversal in this case is required so that the ALJ can apply the correct standard in determining whether Plaintiff's depression is a severe impairment.  In light of the Court's findings that a remand is required because the ALJ applied the incorrect severity standard in finding that Plaintiff's depression was not severe, Plaintiff's remaining arguments need not be addressed.

### III.  CONCLUSION

For the foregoing reasons, the undersigned recommends that Plaintiff's *Motion for Summary Judgment* (Doc. 26) be **GRANTED** and Defendant's *Motion for Summary Judgment*

(Doc. 27) be **DENIED**.

      **SO RECOMMENDED** on September 28, 2011.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

      A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

14